The STATE OF MONTANA ex rel. JON ANGVALL v. THE DISTRICT COURT of the THIRTEENTH JUDICIAL DISTRICT, of the State of Montana, IN AND FOR the COUNTY OF YELLOWSTONE, Charles Luedke, District Judge Presiding, Respondent.

No. 11462.
Submitted April 28, 1968. Decided August 12, 1968.
444 P.2d 370.

George C. Dalthorp, argued, Billings, for relator.

Robert L. Kelleher, argued, Billings, for respondents.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an original proceeding wherein relator seeks an appropriate supervisory writ. In an action commenced in the respondent court by Patricia Angvall against relator, Jon Angvall, her husband, she sought damages for injuries sustained when struck by an automobile driven by him. Relator moved for summary judgment, which motion was denied by the respondent court.

At the time Patricia Angvall was injured, she and relator, Jon Angvall, were husband and wife. It was alleged that the injuries occurred on September 18, 1966. On November 18, 1966, she filed her action for damages and on November 22, 1966, she filed an action to obtain an annulment of her marraige to Jon Angvall and a decree was entered on February 10, 1967.

In Montana the rule has always been that a wife may not maintain an action against her husband for personal injuries upon her by her husband while they are married. Conley v. Conley, 92 Mont. 425, 15 P.2d 922 (1932); Kelly v. Williams, 94 Mont. 19, 21 P.2d 58 (1933). Nor has the rule been changed by the so-called Married Women's Act. Conley v. Conley, supra, p. 438, 15 P.2d 922. It should be borne in mind that in the Kelly case, decided after the Conley case, this Court noted that the Legislature, between the time of the Conley and Kelly cases, considered and rejected a bill that would have allowed a wife to sue her husband for personal injuries inflicted upon her by him during coverture. Kelly v. Williams, supra, at p. 20, 21 P.2d 58. Since no statute has been enacted subsequent to the Kelly and Conley cases allowing a wife to sue her husband for personal injuries he inflicts upon her, the rule is still that as laid down in Conley and Kelly.

The rule also is that a former wife cannot sue her former husband for injuries inflicted upon her by the husband during coverture.

"At common law and in the absence of any constitutional or statuatory provision affecting liability between spouses for personal torts, after divorce neither of the former spouses can maintain an action against the other for a personal tort committed during coverture, and this rule prevents such an action by the former wife against the former husband \* \* \*". 41 C.J.S. Husband and Wife § 396, pp. 886, 887. This Court sees no reason to distinguish between annulments and divorces as far as allowing actions subsequent to the termination of the marriage.

The only question remaining is whether Jon and Patricia Angvall were legally married at the time she sustained her injuries. Section 48-151, R.C.M. 1947, enacted as section 11, chapter 232, Laws of 1963, which was in effect at the time of the marriage of Jon and Patricia Angvall, provided:

"It is unlawful for any person, who is a party to an action for divorce in any court in this state, or for any Montana resident who is a party to an action for divorce elsewhere, to marry again until six months after judgment of divorce is granted, and the marriage of any such person solemnized before the expiration of six months from the date of the granting of judgment of divorce shall be void." Section 48-151 was later repealed by section 1, chapter 63, Laws of 1967.

It is alleged that Jon Angvall, in violation of the above statute, did on June 20, 1966, marry Patricia Angvall in Sheridan, Wyoming. In the district court Patricia Angvall contended that because Jon Angvall married within the six months period, in violation of the above statute, there was no valid marriage and she could, therefore, maintain her action; that is, that the marriage was from its inception null and void.

Former section 48-151 must be read in connection with the other sections of Title 48 covering marriages. Section 48-105 dealing with incompetency of parties to a marriage states that certain marriages are "void from the beginning". Also, section 48-111 dealing with subsequent marriages declares that

two conditions must be met, otherwise a subsequent marriage is "void from the beginning".

On the other hand, former section 48-151 did not say that marriages within six months of a divorce are void from the beginning, only that they are void. This Court must also look to Chapter 2 of Title 48 on annulling marriages. Section 48-201 states: "Either party to an incestuous or *void* marriage may proceed, by action in the district court, to have the same so declared." In view of Section 48-201, we hold that the word *void* in former section 48-151 means that the marriage should be void from the time its nullity shall be declared by a court of competent jurisdiction. See Ragan v. Cox, 210 Ark. 152, 194 S.W.2d 681 (1946); and In re Gosnell's Estate, 63 Cal.App.2d 38, 146 P.2d 42 (1944).

We also reaffirm the Conley and Kelly cases and hold that Patricia and Jon Angvall were married at the time of the accident; that such marriage was subject to an action to annul it, but that because they were married at the time of the accident she may not now, after an annulment has been granted, maintain the action here referred to against her former husband. The motion for summary judgment should have been granted.

Let a writ of supervisory control issue, directed to the respondent court and judge, providing that the order denying summary judgment be vacated and set aside and a new order be made and entered granting summary judgment to relator.

Each party shall bear their own costs.

MR. JUSTICES ADAIR, JOHN CONWAY HARRISON and CASTLES concur.

MR. JUSTICE HASWELL (dissenting):

I dissent.

In my view section 48-151, R.C.M.1947, rendered the purported marriage "unlawful" and "void" because relator was

prohibited from re-marrying within six months after a previous divorce. Such purported marriage violated the declared public policy of this state. Section 48-142, R.C.M.1947.

The majority has, in effect, construed the statutory declaration that such marriage is "void" to mean that it is "voidable". In so doing, public policy prohibiting this marriage has been rendered meaningless and illusory by making its validity dependent upon the will of the parties. As I see it, the effect of the majority opinion is that the prohibited marriage is valid until one of the spouses has it judicially declared void at which time it only becames void prospectively. I would construe the word "void" as used in the statute to mean without legal effect at any time for any purpose.

For the foregoing reasons I would hold that the Angvalls were never married, that the spousal immunity rule has no application, and that the trial court's denial of relator's motion for summary judgment was correct.