MERTIE GRISWOLD ELDRIDGE, Plaintiff, v. FRANK P. WOLFE and Others, Defendants.

Supreme Court, Chautauqua County, April 27, 1927.

Partition — accounting — tenants of premises sold, in action for partition, must account for use, rents and crops from and after commencement of action — tenants entitled to be credited with improvements made prior to commencement of action — estate of deceased referee, who died before completion of reference, entitled to one-half of fees of referee to sell.

In this action for partition, the defendants, who occupied various portions of the premises, must account for the use, rentals, occupation and crops of said premises, from and after the date of the commencement of this action, but they should be credited with such improvements and repairs as a reference may determine had been made up to the time of the commencement of the action.

In view of the fact that the referee named to sell and convey the property, to distribute the proceeds thereof, and to take and state the account therein, died before the completion of the reference, but after the sale, a referee should be appointed to complete the reference.

Since the reference had proceeded to a point where the premises had been sold and ten per cent of the purchase money paid, the estate of the referee, who died before he had completed the reference, is entitled to one-half of the fees of a referee to sell.

PARTITION action in which the plaintiff demands a partition of the premises, and if that cannot be had without prejudice to the parties, then that the premises be sold and the proceeds divided, and that defendants account for the use, rental, occupation, possession, income, crops, trees, timber and productions arising out of and from said premises since July 24, 1921.

*William S. Stearns*, for the plaintiff.

*Ottaway & Munson*, for answering defendants.

*K. W. Glines*, guardian *ad litem*, for Eugene Griswold.

CROSBY, J. The facts in this case, so far as relevant to this opinion, are, briefly, as follows: On July 3, 1882, one Ursula Turner executed a will disposing of her property as follows: " This is to certify that I, Ursula Turner give the use of my whole property at my death to Mariett L. Barney my daughter as long as she lives and at her death to be equally divided the principal between her son Franklin D. Barney and her sister's son Roy D. Herrick and their heirs forever and if they have no heirs, to my brothers and sisters with the exception of William B. Griswold who had the largest share in his father's property and for that and other reasons will not share in mine."

At the time of her death, which occurred April 7, 1883, said

Ursula Turner was the owner of an undivided interest in the premises mentioned and described in the complaint herein. Her will was admitted to probate in the Surrogate's Court of Chautauqua county on November 13, 1883, and letters testamentary issued to Mariett L. Barney. Mariett L. Barney died July 24, 1921. Said Roy D. Herrick had died before the death of said Mariett L. Barney and Franklin D. Barney died about nine months after the death of Mariett L. Barney. It appears that after the death of said Ursula Turner the life tenant and the remaindermen, Franklin D. Barney and Roy D. Herrick, appeared to think they were the sole owners of the interest of the said Ursula Turner in said premises, and in 1910 sold off a portion of the premises to one John R. Rogers, and Rogers in turn sold to defendant Colburn, and likewise other defendants came into possession of portions of said premises and made extensive improvements thereon. No serious disputes as to the title to said premises appears to have come up until 1922 when Frank P. Wolfe, one of the executors of the last will and testament of Franklin D. Barney, started a proceeding in the Surrogate's Court of Chautauqua county for a judicial construction of the will of Ursula Turner. An appeal was taken from the decision of the surrogate in that case to the Appellate Division and later to the Court of Appeals, and it was finally determined by that court that Mariett L. Barney took a life estate in the property of Ursula Turner and the remainder at the death of Mariett L. Barney passed to Franklin D. Barney and Roy D. Herrick, each to take one-half, subject to defeasance in case of death during the life of the life tenant. (*Matter of Turner*, 206 App. Div. 294; 207 id. 837; affd., 239 N. Y. 585.) Accordingly, Roy D. Herrick having died before Mariett L. Barney, his share passed upon the death of Mariett L. Barney to the brothers and sisters of Ursula Turner and their heirs.

Before the conclusion of the proceedings to construe this will, the plaintiff herein brought this action for a partition of all the property in which Ursula Turner had an interest at the time of her death, and in addition demands an accounting for the use, rentals, occupation, possession, income, crops, trees, timber and production arising from said premises since the death of the life tenant. The shares and interests of the parties in the property are conceded but the various answering defendants claim that they should not be compelled to account for any of the benefits received from portions of the premises occupied by them and also that they should be given credit for improvements made by them on the premises. All the matters in difference were referred by an order of this court, dated February 7, 1926, to Thomas J. Cummings, as referee

to hear, try and determine the issues in this case; hearings were had before him on three different days and arguments had, briefs filed and the matter submitted, but Mr. Cummings died before rendering any decision or in any way indicating what disposition he proposed to make of the case. By a further order of the court, Mr. Cummings was appointed referee to sell in partition, and by consent of counsel he advertised the premises and sold them and ten per cent of the purchase money was paid. By consent of counsel the consummation of the sales by the payment of the balance and the delivery of the deeds was deferred until the decision of the claims for an accounting, and claims of different defendants for allowances for improvement.

After Mr. Cummings' death it was stipulated by the attorneys for the respective parties that the matters in difference herein be submitted to this court for determination upon the pleadings and other papers and upon testimony taken before said referee with the same force and effect as if the testimony had been taken before the court; and it was also further stipulated that the court appoint a successor to said Thomas J. Cummings to make conveyance and complete said sale and execute and deliver a referee's deed and distribute the avails of the sale according to the decision of the court; and also that the court determine the compensation to be paid the referee appointed to complete such duties.

The law seems to be well settled that a cotenant against whom a partition action has been brought is entitled to credit for improvements and repairs when the party making them has acted in good faith and there has been a substantial benefit to the premises. (See *Satterlee* v. *Kobbe*, 173 N. Y. 91; *Ford* v. *Knapp*, 102 id. 135.)

I am, therefore, of the opinion that the various parties to the action should be allowed for such improvements and repairs as it shall be determined have been made up to the time of the commencement of this action. I do not think a party should be allowed for repairs or improvements made after the commencement of this action by the service of summons and complaint on him or her, since from that time improvements or repairs could not be said to be made in good faith.

I am also of the opinion that the various parties should be compelled to account for the use, rentals, occupation, crops and avails of said premises from and after the date of the commencement of this action against the respective parties.

As a general proposition one tenant in common who simply occupies premises himself cannot be charged with rent by other cotenants or compelled to account to another cotenant unless he has agreed to pay rental or has ousted his cotenant or denied the rights

of his cotenant to the use of the premises. (See *LeBarron* v. *Babcock,* 122 N. Y. 153.)

The evidence in the case at bar fails to show these elements. There is an exception to this general rule when one tenant in common occupies a position of trust or quasi trust or fiduciary relation towards his cotenant as in the case *Minion* v. *Warner* (238 N. Y. 413), in which case the tenant in possession was the sole executrix under a will and was given a power of sale. No such fiduciary relation seems to exist in the case at bar.

I am of the opinion, however, that when an action has been commenced and a copy of the complaint served on a party by a cotenant, and the complaint demands an accounting, such proceeding is equivalent to a demand for a share in the rental and benefits of the premises occupied by a defendant; and when, as in this case, cotenants serve answers denying that they are liable to account, that surely is equivalent to an ouster as from the time of the commencement of the action.

An order should be submitted for the appointment of a referee to take and state the account; also an order for the appointment of a referee to complete the sale, make conveyance and distribute the proceeds.

In regard to the question of referee's fees I am of the opinion that the estate of Thomas Cummings should be paid thirty dollars fees as referee to hear, try and determine, that being the amount allowed by section 1545 of the Civil Practice Act for three days spent where no different amount is fixed by consent of the parties; and for his fees as referee to sell I am of the opinion that he should be allowed one-half the total amount which he would have received as such referee had he completed his duties. I am aware that a referee ordinarily is entitled to no fees until his duties are completed. (See *Hebard* v. *City of New York,* 137 App. Div. 752.) But in that case the court points out that the services of the referee were of no value to the parties, while in the case at bar Mr. Cummings' services both as referee to hear, try and determine, and as referee to sell, are being made use of by the parties, and surely no court of equity ought to allow the estate of a deceased referee to go unpaid and at the same time make use of the labors performed by the referee. I have estimated that Mr. Cummings had performed approximately one-half of the services of a referee to sell. He had posted notices to sell, advertised the property, held a sale and collected ten per cent of the proceeds. There is no way from the evidence or stipulations of determining just what per cent of his duties as referee to sell were performed before his death, but by taking judicial notice of the ordinary duties of referees

to sell, and from the facts stipulated, I hold that his estate should receive one-half such fees and the new referee to sell the other one-half when his duties are completed.

Findings may be prepared and judgment entered accordingly.