No. 14879

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

MALLORY D. LAWRENCE,

Plaintiff and Appellant,

vs.

CHRISTENE HARVEY et al.,

Defendants and Respondents.

---

Appeal from:  District Court of the Eighth Judicial District,
Honorable H. William Coder, Judge presiding.

Counsel of Record:

For Appellant:

Larsen and Neill, Great Falls, Montana

For Respondents:

Thomas E. Boland, Great Falls, Montana

---

Submitted on briefs: January 16, 1980

Decided: MAR - 7 1980

Filed: MAR - 7 1980

*Thomas J. Kearney*
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

This is an action for partition of real property brought by Mallory D. Lawrence. The District Court of the Eighth Judicial District, Judge H. William Coder presiding, denied plaintiff's prayer for a partition sale in a judgment dated June 12, 1979. This judgment ordered the plaintiff to quit-claim his interest in the property to the individual defendants upon their payment to him of $3,879.15, the sum set by the District Court as representing his equity. The judgment from which he now appeals further required plaintiff Mallory D. Lawrence to pay defendants' attorneys fees and costs.

The property in question is a single family residence located on a standard city lot in Great Falls. By agreement of the parties, the property is not subject to actual partition, and the plaintiff has prayed for a partition sale and a division of the proceeds according to the interests determined by the Court. The defendant First Federal Savings and Loan Association holds a first mortgage on the property. The priority of its lien is conceded by all parties and, by stipulation, it did not participate in these proceedings. The five individual defendants are the children of plaintiff Mallory D. Lawrence by his former wife, Mary K. Lawrence.

The appellant left his family and the family home in August 1968 and thereafter resided in another Montana city. Mary K. Lawrence filed an action for separate maintenance and child support on August 5, 1968, and after a show cause hearing on April 3, 1969, appellant was ordered to pay $225 per month child support to the clerk of the court pending entry of a decree.

The property subject to this litigation was the family home of Mallory D. Lawrence and Mary K. Lawrence prior to their separation and divorce. In the divorce decree dated August 6, 1970, the District Court Judge R.J. Nelson set aside the family home, together with furnishings and fixtures, for the use and benefit of Mary K. Lawrence and the minor children "until further order of the Court." In addition to awarding the use of the family home to Mary K. Lawrence and the four minor children (the eldest child had already attained the age of majority), the divorce decree ordered appellant to pay $225 per month to the clerk of court "as and for the support of the said minor children . . . ."

Appellant made the required payments through February 1975, when the youngest of the children attained the age of majority. Later, on December 11, 1975, he petitioned the divorce court for an order determining the respective interests of himself and his former spouse in the property. A hearing was held on this petition on January 8, 1976, but the District Judge made no decision on the petition, despite the efforts of appellant's counsel to obtain a ruling. Mary K. Lawrence discovered that she had terminal cancer and quitclaimed her interest in the property equally to the five children of the parties, the defendants-respondents in this action, in a deed dated and recorded May 5, 1976. She died in 1977. District Judge R.J. Nelson had left the bench at the end of 1976 without ruling on appellant's petition.

Mallory D. Lawrence subsequently filed this action for a partition of the real property on February 9, 1978. The matter was heard by the District Court on April 20, 1979 and the court's findings of fact, conclusions of law, and judg-

ment were entered in favor of the defendants on June 12, 1979.

The property was originally acquired in 1958 by the appellant and Mary K. Lawrence as joint tenants with a right of survivorship. The purchase price of $15,900 was satisfied by the assumption of an existing loan in the amount of $11,750 and by a downpayment of $4,150. The District Court found the source of that downpayment to be $3,029.91 in joint equity from the sale of a previous family home in Missoula and a $2,500 loan from appellant's father in the form of a promissory note signed by both appellant and Mary K. Lawrence. An unspecified portion of this note was paid and the remainder of the obligation was cancelled after the 1970 divorce. The District Court made the further finding that the original amount of principal owing on the mortgage assumed by Mallory D. Lawrence and Mary K. Lawrence had been reduced by $3,608.30 as of the date of the divorce. Based on the foregoing, the District Court determined appellant's interest in the property to be one-half of the downpayment plus one-half of the equity accumulated during the marriage: a total of $3,879.15. Appellant was ordered to quitclaim his interest in the property to the individual defendants upon their payment to him of that sum.

Four issues are presented by this appeal:

1. Whether the District Court abused its discretion by failing to order a partition sale?

2. Whether the District Court abused its discretion by failing to credit appellant with a contribution to the equity in the home for the child support payments he made after the date of divorce?

-4-

3. Whether the District Court abused its discretion by failing to give the appellant credit for a pro-rata share of the property's appreciation in value by considering the property at its real market value?

4. Whether Mallory D. Lawrence is estopped from asserting any interest in the property beyond that interest which he had as of the date of the divorce decree?

It is a common practice in cases involving a dissolution of marriage for the District Courts to require that the family home be set aside during the minorities of the children for their use and benefit and for that of their mother as well. It is also usual in such cases for the courts to make some provision in the decree for a final disposition of the house, which is usually the family's only major asset, after the children have reached their majorities and the husband's obligation to support has ceased. The problem in this case arises because the decree of dissolution failed to make an ultimate disposition of the family home, and merely set it aside for the use and benefit of the minor children and their mother "until further order of the Court." No such order was forthcoming prior to the judgment of the District Court in the present action, although the appellant had filed a petition for modification of the decree of dissolution on December 11, 1975, and repeatedly attempted to obtain a ruling on that petition.

Subsequently, Mallory D. Lawrence brought this action for a partition of the real property, requesting a partition sale. The first issue to be resolved is whether or not the District Court abused its discretion by failing to order a partition sale.

During pretrial conference the District Court ruled, on agreement of the parties, that as a matter of law the effect of a quitclaim deed by one of two joint tenants to a third party is to create a tenancy in common between the joint tenant who did not join in the deed and the third party. Appellant argued in the trial court that title to the residence was held in joint tenancy by himself and his former wife, so that when she executed a quitclaim deed to their five children, the joint tenancy was severed and the appellant and his children became tenants in common. Under this theory, he retained an undivided one-half interest in the property while they shared equally in the wife's half and therefore each received an undivided one-tenth interest. In response to the defendants' contentions, appellant claimed in the alternative his contribution to equity as a basis for determining his interest in the property.

"The primary object of an action of partition . . . [is] . . . to divide among the co-owners land held by them either as joint tenants or as tenants in common according to their respective interest . . ." Emery v. Emery (1948), 122 Mont. 201, 200 P.2d 251, 265. In Montana, an action for partition is a special statutory proceeding. Hurley v. O'Neill (1905), 31 Mont. 595, 79 P. 242, 243. "We must therefore look to the statute for the authority to bring the action, and for the procedure to be followed both in bringing the action and after it is instituted." Hurley, supra, 79 P. at 243. Our statute authorizing an action for partition is section 70-29-101, MCA:

> "When several cotenants hold and are in
> possession of real property as joint tenants
> or tenants in common, in which one or more
> of them have an estate or inheritance or for
> life or lives or for years, an action may be

> brought by one or more of such persons for
> a partition thereof, according to the respec-
> tive rights of the persons interested therein,
> and for a sale of such property or a part
> thereof if it appears that a partition cannot
> be made without a great prejudice to the own-
> ers." (Emphasis added.)

Although he is a tenant in common holding legal title to an estate of inheritance, the appellant in this case is not in actual possession of the property because of the divorce decree granting exclusive possession to his former wife, now deceased, and their then minor children. Actual physical possession however has been held not to be essential to maintenance of an action for partition under our statute:

> "The Montana statute gives the remedy of
> partition to co-tenants 'who hold and are
> in possession of real property as joint
> tenants or tenants in common,' etc. Code
> Civ. Proc. § 1340 [now § 70-29-101, MCA].
> We think that the possession which the
> law imputes to the holder of the legal
> title is sufficient to maintain partition,
> under this statute." Heinze v. Butte &
> Boston Consolidated Mining Co. (9th Cir.
> 1903), 126 F. 1, 3, cert. den. 195 U.S.
> 631.

Having met the statutory prerequisites of section 70-29-101, MCA, appellant was entitled as a matter of right to maintain his suit for partition under that section, which provides: "an action may be brought by one or more of such persons for a partition . . ." This conclusion is but-tressed by the directive in section 70-29-202(1), MCA, that while the court may order a partition sale in appropriate circumstances, it must otherwise order an actual partition upon the requisite proofs being made.

> "If it be alleged in the complaint and
> established by evidence or if it appear
> by the evidence without such allegation
> in the complaint to the satisfaction of
> the court that the property or any part

is so situated that the partition cannot
be made without great prejudice to the
owners, the court may order a sale there-
of; otherwise, upon the requisite proofs
being made, it must order a partition
according to the respective rights of
the parties as ascertained by the court
and appoint three referees therefor and
must designate the portion to remain un-
divided for the owners whose interests
remain unknown or are not ascertained."
Section 70-29-202(1), MCA. (Emphasis added.)

Although there are no Montana cases directly on point,

the general rule is that a cotenant is entitled to partition

as a matter of right, and not merely as a matter of grace

within the discretion of the court. While the right is

sometimes said to be absolute, partition may be denied where

it would be against public policy or legal or equitable

principles, and the right may in appropriate circumstances

be waived by agreement of the parties. 68 C.J.S. Partition

§ 21; 59 Am.Jur.2d Partition §30; 4 Thompson on Real Property

§ 1822 (1979); 2 Tiffany on Real Property § 474 (3rd ed.

1939); 4A Powell on Real Property § 611 (1949). California

has interpreted its partition statute in accordance with

this general rule. Lazzarevich v. Lazzarevich (1952), 39

Cal.2d 48, 244 P.2d 1, 2; DeRoulet v. Mitchel (1945), 70

Cal.App.2d 120, 160 P.2d 574, 576. Sections 70-29-101 and

70-29-202(1), MCA, were originally enacted in 1867 as part of

the Bannack Statutes; their source is sections 752 and 763

of the California Code of Civil Procedure. Montana follows

the rule of statutory construction that where a statute is

adopted from a sister state, it is ordinarily presumed that

the legislature borrows the construction placed upon it by

the highest court of the state from which it is borrowed,

although such construction is not binding upon this Court.

Continental Oil Co. v. Board of Labor Appeals (1978), ___

Mont. ___, 582 P.2d 1236, 1240, 35 St.Rep. 1153, 1156; J.T. Miller Co. v. Madel (1978), ___ Mont. ___, 575 P.2d 1321, 1322, 35 St.Rep. 263, 265; State v. Murphy (1977), ___ Mont. ___, 570 P.2d 1103, 1105, 34 St.Rep. 1174, 1177; State ex rel. Mankin v. Wilson (1977), ___ Mont. ___, 569 P.2d 922, 924, 34 St.Rep. 1075, 1078. Therefore, in view of the California courts' interpretation of the California statutes, which are both similar to and the source of our own statutes, we are persuaded to adopt the general rule in this jurisdiction.

Since partition may be denied where it would be against principles of law or equity or against public policy, we must ask whether any of these reasons exist for denying partition in this case. The difficulty arises because of the open divorce decree, which failed to make a final disposition of the marital property, i.e. the house and lot now sought to be partitioned. Certainly, it would be against public policy and principles of law and equity to allow partition during the minority of the children while the house was set aside for the exclusive use of the mother and minor children under a decree of dissolution. In the present case, however, the former wife is deceased and all of the children have attained the age of majority. They are now the appellant's cotenants, having been deeded the interest of their mother by quitclaim deed prior to the institution of this action for partition. That being the case, we conclude that the District Court abused its discretion in denying partition. Our conclusion is supported by the decisions in several cases holding that a former spouse is entitled to partition after a decree of divorce. Tullis v. Tullis (Fla. 1978), 360 So.2d 375; Best v. Williams

-9-

(1976), 260 Ark. 30, 537 S.W.2d 793; Squibb v. Squibb (1961), 190 Cal.App.2d 766, 12 Cal.Rptr. 346; Barba v. Barba (1951), 103 Cal.App.2d 395, 229 P.2d 465, 466; Deacon v. Deacon (1929), 101 Cal.App. 195, 281 P. 533, 535; Yax v. Yax (1925), 240 N.Y. 590, 148 N.E. 717; Lang v. Lang (1920), 182 Cal. 765, 770, 190 P. 181.

The second issue presented by this appeal is whether or not the District Court abused its discretion by failing to credit appellant with a contribution to the equity in the home for the child support payments he made after the decree of divorce. The District Court ordered appellant to quit-claim his interest to the individual respondents upon their payment to him of a sum representing one-half of the down-payment made on the house plus one-half of the reduction in the principal balance owing on the mortgage as of the date of the divorce decree: a total of $3,879.15. Thus, appellant complains he was not credited with any increase in equity in the property after the 1970 decree, although he made support payments of $225 per month until his youngest child reached majority in 1975. The testimony was that the house payments, including taxes and insurance, were approximately $130 per month.

The District Court found that from March 1969 to the present time, Mary K. Lawrence and her children have made all of the monthly mortgage payments and paid all taxes and insurance on the property, while appellant has failed to make any such payments. The payments which appellant was ordered to make for the "support" of his minor children were intended to provide for the common necessities of life. If the District Court had intended that a part of the support

-10-

payment was returnable to the father in the form of an equity in the house after the children were emancipated, it should have been clearly spelled out in the divorce judgment. It was not. Appellant claims that Judge Nelson's remarks to appellant at the conclusion of the April 3, 1969 show cause hearing demonstrate that he intended the $225 monthly child support payments to cover the house mortgage payments. His remarks may appear to indicate this but again they may not. This is the reason that a refund of this kind must appear in the judgment. The District Court properly denied appellant credit for any increase in equity in the house on account of the child support payments he made after the decree of divorce.

Nevertheless, the District Court abused its discretion by failing to credit appellant with a pro-rata share of the property's appreciation in value. Appellant remained a cotenant after the 1970 divorce decree, and as such he was entitled to a share of the appreciation in proportion to his interest in the property. By limiting his interest to one-half of the 1958 downpayment and one-half of the amount by which the principal owing on the mortgage was reduced during the marriage, the District Court completely denied appellant the benefit of the property's increase in value over the past twenty-odd years. Appellant was entitled to his proportionate share of that appreciation as a cotenant.

That is not to say that a partition court may not make an equitable adjustment of the cotenants' interests. On the contrary, the rule is that "[t]he court can adjust all the equities of the parties to a partition suit, if they are limited to such as arise from the partition of the land . . ."

4 Thompson on Real Property §§ 1829, 1830 at 331 (1979).

See also 4A Powell on Real Property § 611 at 646-647 (1949);

68 C.J.S. Partition § 135; Demetris v. Demetris (1954), 125

Cal.App.2d 440, 270 P.2d 891, 894; Withington v. Collins

(1943), 60 Cal.App.2d 110, 140 P.2d 493, 495. Our partition

statute provides that "[t]he right of the several parties,

plaintiff as well as defendant, may be put in issue, tried,

and determined in such action." Section 70-29-201, MCA.

The District Court found that appellant ceased making

house payments after the divorce was granted, and all house

payments after that time were made by the respondents and

their mother. "In the final accounting between the co-

tenants incident to partition, a cotenant will be charged

with . . . payments in discharge of principal and interest

on mortgages and other liens . . ." 2 American Law of

Property § 6.26 at 117 (1952). See also Bailey v. Mormino

(1958), 6 App.Div.2d 993, 175 N.Y.S.2d 993; Fundaburk v.

Cody (1954), 261 Ala. 25, 72 So.2d 710; Hermance v. Weisner

(1938), 228 Wis. 501, 279 N.W. 608, 610. Thus, respondents

should be credited with payments in excess of their share

expended by them after the divorce for principal and in-

terest plus insurance and taxes on the property. Appellant

is not entitled to an offset against this credit for the

reasonable rental value of the property during the period of

time before this action. Even though the respondents re-

mained in exclusive possession, the general rule is that a

cotenant in possession is not liable for the use and occu-

pation of the premises. 68 C.J.S. Partition § 138(b). That

is especially true in this case where respondents enjoyed

the benefits of possession under a court decree. The re-

spondents, however, must account for the value of their use

and occupation in excess of their proportionate share after the appellant demanded the equivalent of joint possession in February 1978 by initiating this action for a partition sale. Eldridge v. Wolf (1927), 129 Misc.Rep. 617, 221 N.Y.S. 508, 511.

The final issue for our consideration is whether or not Mallory D. Lawrence is estopped from asserting any interest in the property beyond that which he had as of the date of the divorce decree. The District Court found that he was so estopped for two reasons: (1) because he allegedly changed his purpose to the injury of the defendant by first claiming to have made child support payments under the divorce decree and then asserting that he has been making house payments all these years; and (2) because he allegedly attempted to take advantage of his own "wrong" by failing to contribute to the accumulated equity in the property and by now seeking an award of part of that equity.

It is unnecessary for us to consider the first finding because we have concluded that the District Court properly denied appellant credit for any increase in equity in the house on account of the child support payments he made after the divorce decree. We disagree with the District Court's conclusion that appellant was estopped from asserting any interest in the property's appreciation in value after the divorce for reasons stated earlier in this opinion relating to his rights as a cotenant. Furthermore, appellant committed no "wrong" by failing to make house payments after the divorce, and the District Court's conclusion that he is estopped to take advantage of his own alleged "wrong" is erroneous.

In summary, there was no substantial basis for the District Court's findings as to appellant's interest in the property, and these findings must be set aside. "Where there is no substantial basis for District Court findings and if a clear and satisfactory showing is not made to support the findings, this Court will set such findings aside." Swanson v. St. John's Lutheran Hospital (1979), ____ Mont. ____, 597 P.2d 702, 708, 36 St.Rep. 1075. See also Johnson v. Johnson (1977), 172 Mont. 150, 560 P.2d 1331, 1333.

The cause is affirmed in part and reversed in part and remanded to the District Court for a partition sale and to adjust the parties' equities in conformity with this opinion.

_____
        Justice

We concur:

_____
Chief Justice

_____

_____
Justices

-14-