No. 84-106

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

IN RE THE MARRIAGE OF

LOTTIE ANN BLADES,

Petitioner and Appellant,

and

JOSEPH A. BLADES,

Respondent and Cross-Appellant,

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable William J. Speare, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Keefer, Roybal, Hanson, Stacey & Jarussi, Billings,
Montana

For Respondent:

James D. Walen; Felt & Martin, Billings, Montana

Submitted on Briefs: May 24, 1984

Decided: September 25, 1984

Filed: SEP 25 1984

*Ethel M. Harrison*

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

The District Court of Yellowstone County entered an order equally dividing between Lottie Ann Blades (Lottie) and Joseph A. Blades (Joseph) the equity in their residence. No credit was given Lottie for house payments made by her. She appeals from that determination. Joseph appeals from the determination that reasonable sale costs be deducted from the net equity in the house if Lottie exercises her option to purchase. We affirm the District Court.

The following issues are presented on appeal:

1. In dividing the equity in the family home, should Lottie receive credit for one-half of the house mortgage payments that she made on behalf of Joseph?

2. If Lottie exercises her option to purchase Joseph's one-half interest in the house, should projected sale costs be considered in determining the net equity in the house?

Lottie and Joseph were married on June 21, 1969. In 1973, they purchased a home on which the monthly house payments were $261. Two sons were born of the marriage. The older son suffers from Down's Syndrome, is severely retarded, and has various physical and mental problems. The District Court found that Brett Blades requires more care than the average child and is likely to have more health problems in the future. The younger son has no special needs.

The parties separated in February, 1978. For the first two or three months after separation, Joseph paid $250 per month to Lottie. After that, he paid $300 per month with exceptions not significant to this appeal.

The final divorce decree was entered in December, 1978. The decree dissolved the marriage and awarded custody of the two children to Lottie, with reasonable visitation rights to Joseph. The decree did not specify any amount for child

2

support and did not dispose of the parties' property or indebtedness. Those matters were left for agreement between the parties. No written agreement was ever executed. In July, 1983 Lottie petitioned the District Court to set the monthly child support, to require payment of insurance premiums and to make an equitable division of the parties' property and indebtedness. The issues on appeal relate only to the division of property.

I

In dividing the equity in the family home, should Lottie receive credit for one-half of the house mortgage payments that she made on behalf of Joseph?

The testimony of both Lottie and Joseph establishes that no agreement was reached between them, either oral or written, with regard to the purpose for the $300 per month paid by Joseph to Lottie. In substance, Lottie testified that she viewed the payments as support for the children and did not view them as both support and monthly house payments of $261. While that was her view, she testified that no agreement to that effect was reached between Joseph and her. In contrast, Joseph testified that when he made the payments of $300, his understanding was that the money was going to assist in the support of the children and in the payment on the house. However, he also testified that no agreement to this effect was reached between Lottie and him.

In finding of fact 5, the District Court pointed out that from April, 1978 to May, 1983, Joseph made payments of $300 per month which he claimed were for child support and mortgage payments. The District Court ultimately viewed the conflicting evidence more favorably for Joseph and did not grant any offset to Lottie for the mortgage payments made by her. The uncontradicted evidence showed that Lottie had paid

3

57 monthly payments of $261 each from the date of separation through September 1983, totalling $14,877. She contended that one-half of that or $7,438, plus one-half of any additional payments made by her, should be granted as an offset against Joseph's one-half interest in the property.

In making this argument, Lottie relies on the case of Lawrence v. Harvey (1980), 186 Mont. 314, 607 P.2d 551. In that case, this Court concluded that where the wife had made all of the monthly mortgage payments and the husband had made none, no equity should arise so far as the husband was concerned in the absence of a specific provision in the dissolution decree.

The facts distinguish Lawrence from the present case. In Lawrence, the court order provided that the payments were to be made for the support of the minor children. We stated:

> ". . . The payments which appellant was ordered to make for the 'support' of his minor children were intended to provide for the common necessities of life. If the District Court had intended that a part of the support payment was returnable to the father in the form of an equity in the house after the children were emancipated, it should have been clearly spelled out in the divorce judgment. It was not. . . . The District Court properly denied appellant credit for any increase in equity in the house on account of the child support payments he made after the decree of divorce." Lawrence, 186 Mont. at 323, 607 P.2d at 556-57.

The court decree here failed to make any requirement for payment on the part of Joseph to Lottie and, in particular, did not describe payments to be made as support for the minor children. Lawrence does not control.

The record contains conflicting evidence as to the parties' understanding of Joseph's monthly payments to Lottie. Such conflict is to be resolved by the trial court. In order to prevail at the appellate level, Lottie must show an abuse of discretion by the District Court, demonstrate by a clear preponderance of the evidence that the findings are

4

incorrect, and overcome the presumption that the judgment of the trial court is correct. Bier v. Sherrard (Mont. 1981), 623 P.2d 550, 551, 38 St.Rep. 158, 159. This Lottie has failed to do.

We affirm the District Court on this issue.

## II

If Lottie exercises her option to purchase Joseph's one-half interest in the house, should projected sale costs be considered in determining the net equity in the house?

Joseph argues that, in the event Lottie exercises the option to purchase given to her under the order, she is authorized to purchase Joseph's interest in the house at $13,940. That figure was calculated by deducting the parties' remaining indebtedness and $4,024 in expected sale costs from the net equity in the home.

Joseph argues that because there would be no sale costs upon Lottie's exercise of her option to purchase, the $4,024 in costs should not be deducted if the wife exercises the option. Lottie argues that Joseph is willing to take less money for his one-half interest in the house from a stranger than he is willing to take from his former wife and the mother of his children. She suggests that this indicates his attitude toward her and the children.

The record contains substantial evidence to support the District Court's conclusion that Joseph's interest in the home is equal in amount to that which it would bring upon the open market. That amount includes consideration of projected sale costs. Joseph has failed to show that there was an abuse of discretion, to prove that a preponderance of evidence exists against the finding by the court, and to overcome the presumption that the judgment of the District Court is correct.

We affirm the judgment of the District Court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices