No. 85-350

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

LINDA J. MILLER,

        Plaintiff and Appellant,

   -vs-

FALLON COUNTY, CECIL P. MILLER,
DAVIS TRANSPORT, INC., and PREFAB
TRANSIT CO.,

        Defendants and Respondents.

_____

APPEAL FROM: District Court of the Sixteenth Judicial District,
In and for the County of Fallon,
The Honorable A. B. Martin, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Lucas & Monaghan; A. Lance Tonn argued, Miles City,
Montana

    For Respondent:

        Anderson, Edwards & Molloy; Donald W. Molloy argued
for Miller, Billings, Montana
Anderson, Brown Law Firm; Steven J. Harman argued for
Davis Transport, Billings, Montana
Moulton Law Firm; Sidney R. Thomas argued for Prefab
Transit, Billings, Montana
Denzil R. Young, Baker, Montana
Calvin J. Stacey, Billings, Montana

    For Amicus Curiae:

        Rossbach & Whiston for Rosina Woodhouse, Missoula,
Montana
Sandall, Cavan, Smith, Howard & Grubbs; W. Corbin
Howard for Audrey D. Noone, Billings, Montana

_____

Submitted: March 14, 1986

Decided: June 26, 1986

Filed:   JUN 2 6 1986

_____
                Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

Linda J. Miller appeals judgment of the Sixteenth Judicial District Court, County of Fallon, which granted summary judgment to defendants, Cecil P. Miller (Miller), Davis Transport, Inc. (Davis), and PreFab Transit Co. (PreFab). We reverse.

Linda Miller (appellant) was injured in a one vehicle truck accident. Her husband, Cecil Miller, an independent truck driver, was the driver of the truck. Miller had entered into a contract for services with PreFab on August 3, 1982. As part of that contract, Miller delivered a load of mobile home frames from Elkhart, Indiana, to Belgrade, Montana. The delivery was made November 2, 1982.

Appellant accompanied her husband on the trip. They stayed in Belgrade, Montana, the night of November 2. The next day, Miller, on behalf of PreFab, entered into a contract with Davis whereby Miller agreed to haul a load of lumber from Townsend, Montana, to Minnesota for Davis. The accident occurred November 3, 1982, while the Millers were traveling to Minnesota. Appellant was thrown from the truck and is now a paraplegic.

She filed an action March 22, 1984, against Fallon County, alleging negligent design of a roadway; Miller, alleging negligent, careless and unlawful operation of a vehicle; Davis, alleging vicarious liability for Miller's negligence; and PreFab, alleging vicarious liability for Miller's negligence. The vicarious liability actions are premised on allegations that Miller was the employee of Davis and/or PreFab at the time of the accident.

Miller, Davis and PreFab filed motions for summary judgment on the basis of interspousal tort immunity. PreFab

2

additionally sought summary judgment on the basis of the following pre-injury release form signed by appellant on September 12, 1981:

Application to travel with my husband.

* * *

Furthermore, in the event of an accident or other manner wherein I may lose my life, be injured, or in any way contribute to the injury or loss of life to another, I hereby waive any rights whatsoever against Pre-Fab Transit Co. for what otherwise might be its liability and agree that Pre-Fab Transit Co., its agents, employees and contractors are to be held harmless in all respects by virtue of my being a passenger in said vehicle.

The motions were briefed and argued. Thereafter, the District Court granted the motions for summary judgment on the basis of interspousal tort immunity. The pre-injury release was also held to support PreFab's motion. Following Rule 54(b), M.R.Civ.P., certification, a notice of appeal was timely filed. The following issues are raised:

1. Whether the District Court committed reversible error in granting summary judgment in favor of Miller on the basis of the defense of interspousal tort immunity?

2. Whether the District Court committed reversible error in granting summary judgment in favor of Davis and PreFab on the basis of its finding that the defense of interspousal tort immunity is available to a spouse's employer?

3. Whether the District Court committed reversible error by granting summary judgment to PreFab on the basis of a waiver given to PreFab by appellant.

THE DOCTRINE OF INTERSPOUSAL TORT IMMUNITY

The doctrine of interspousal tort immunity derives from the common law. When Montana became a state, it adopted the common law of England as "the rule of decision in all the courts of this state." Section 1-1-109, MCA. The doctrine

3

of interspousal tort immunity is a creature of court decision and subject to change by the courts. Fernandez v. Romo (Ariz. 1982), 646 P.2d 878, 880. Brooks v. Robinson (Ind. 1972), 284 N.E.2d 794, 797.

This Court has previously refused to abolish the doctrine of interspousal tort immunity. Conley v. Conley (1932), 92 Mont. 425, 15 P.2d 922; Kelly v. Williams (1933), 94 Mont. 19, 21 P.2d 58; State ex rel. Angvall v. District Court (1968), 151 Mont. 483, 444 P.2d 370; and State Farm Mutual Automobile Ins. Co. v. Leary (1975), 168 Mont. 482, 544 P.2d 444. However, judicial modification of the common law is sometimes required to prevent great injustice or to insure that the common law is consonant with the changing needs of society. Digby v. Digby (R.I. 1978), 388 A.2d 1. In fact, "[t]he strength and genius of the common law lies in its ability to adapt to the changing needs of the society it governs." Brooks v. Robinson, 284 N.E.2d at 797.

The doctrine of stare decisis is not an impenetrable bar to conforming common law to the needs of a dynamic and evolving culture:

> This Court recognizes that courts may have previously fashioned a rule of immunity from wrong-doing, having adopted a posture at an earlier date in response to what appeared to be desirable then as a matter of policy; yet when it later appears to be unsound within a given context, especially when the reasons upon which the immunity is based no longer exist, it remains within the domain of the judiciary to reject the applicability of such a rule.

Luna v. Clayton (Tenn. 1983), 655 S.W.2d 893, 897.

The historical reasons for retention of immunity are: 1) unity--the common law concept that husband and wife are one person; 2) family harmony; and 3) the possibility of fraud and collusion. These reasons no longer dictate such a

4

harsh and absolute result. See Tobias, Interspousal Tort
Immunity in Montana, 47 Mont.L.Rev. 23 (1986).

The concept of unity originated at a time when a woman
relinquished her rights as an individual when she married.

> The "supposed unity" of husband and wife, which
> serves as the traditional basis of interspousal
> disability, is not a reference to the common nature
> or loving oneness achieved in a marriage of two
> free individuals. Rather, this traditional premise
> had reference to a situation, coming on from
> antiquity, in which a woman's marriage for most
> purposes rendered her a chattel of her husband.

Freehe v. Freehe (Wash. 1972), 500 P.2d 771, 773. The
concept of unity is outmoded and has been significantly
eroded by both statutory and case law.

Family harmony will not be destroyed by the filing of a
lawsuit. If a family is sound, it will most likely survive
the legal action. A weak family bond cannot be strengthened
by our judicial system.

> [I]t is difficult to perceive how any law barring
> access to the courts for personal injuries will
> promote harmony. If this were a valid sociological
> consideration, the Legislature could orchestrate
> even greater harmony by abolishing the statute
> giving the right to divorce.

Coffindaffer v. Coffindaffer (W.Va. 1978), 244 S.E.2d 338,
342.

The destruction of family harmony is even less of a
concern because of insurance. A spouse is normally not
seeking redress against the other spouse, but rather spouse's
insurance carrier. See Fernandez, 646 P.2d at 881-882. In
Transamerica Insurance Co. v. Royle (Mont. 1983), 656 P.2d
820, 40 St.Rep. 12, we recognized the effect of insurance on
suits against parents by their minor children. The same
rationale applies here. "The existence of liability
insurance prevents family discord and depletion of family
assets in automobile negligence cases . . . (citations
omitted)." Royle, 656 P.2d at 823, 40 St.Rep. at 16.

Our decision in Royle, 656 P.2d at 823-824, 40 St.Rep at 16, is also instructive concerning the problems of fraud and collusion. The possibility of fraud and collusion exists throughout all litigation. One of the many functions of a judge or jury is to determine the facts of the case, including the potentially collusive aspect of the parent-child or interspousal relationship. Thus, the possibility of fraud or collusion is not sufficient reason to warrant continued reliance on interspousal tort immunity. The defense is abolished in Montana. Previous decisions to the contrary, cited above, are overruled.

The abolition of the doctrine of interspousal tort immunity renders unnecessary consideration of whether the doctrine is available to the allegedly-negligent spouse's employer.

## THE EFFECTS OF THE PRE-RELEASE FORM

More than a year prior to the accident, appellant requested and received permission from PreFab to ride with her husband on interstate trips. In return, PreFab insisted that she sign a document entitled "Application to Travel with My Husband" which states in pertinent part:

> Furthermore in the event of an accident or other manner wherein I may lose my life, be injured, or in any way contribute to the injury or loss of life to another, I hereby waive any rights whatsoever against Pre-Fab Transit Co. for what otherwise might be its liability and agree that Pre-Fab Transit Co., its agents, employees and contractors are to be held harmless in all respects by virtue of my being a passenger in said vehicle. (Emphasis supplied.)

The trial judge held that this waiver absolves PreFab from any liability with respect to appellant. On appeal, appellant contends the waiver is unenforceable because it is against public policy.

The waiver constitutes a private contract between private individuals. Generally, private parties are allowed to contract away liability for negligent acts if the interest of the public is not involved and the contracting parties stand on equal footing. Checkley v. Illinois Central Railroad Co. (Ill. 1913), 100 N.E. 942; Haynes v. County of Missoula (1973), 163 Mont. 270, 279-280, 517 P.2d 370, 376. See also Speiser, Krause and Gans, The American Law of Torts, § 5:39, p. 1095 (1983).

> A different result has obtained where a facility or service is offered as a matter of convenience-- rather than one of necessity. In such instances, if the user assumes a risk of loss, there appears to be no basis for holding the exculpatory provision invalid on the ground that the parties were in an unequal bargaining position inasmuch as the user is under no compulsion to accept the offer of service or its terms.

However, the fact that the waiver is a private contract is not determinative in this case. We must also decide whether the waiver is in violation of § 28-2-702, MCA, which states:

> Contracts which violate policy of the law - exemption from responsibility. All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, for willful injury to the person or property of another, or for violation of law, whether willful or negligent, are against the policy of the law.

This Court has never before had occasion to interpret the statute. It was adopted verbatim from California in 1895.

> Montana follows the rule of statutory construction that where a statute is adopted from a sister state, it is ordinarily presumed that the legislature borrows the construction placed upon it by the highest court of the state from which it is borrowed, although such construction is not binding upon this Court. (Citations omitted.)

Lawrence v. Harvey (1980), 186 Mont. 314, 321, 607 P.2d 551, 556. We therefore find the interpretation of the statute by

7

the California Supreme Court in Tunkl v. Regents of University of California (Cal. 1963), 383 P.2d 441, 32 Cal.Rptr. 33, to be persuasive. Consistent with that decision, we hold that the words "his own" qualify the term "fraud", as well as the terms "willful injury to the person or property of another" and "violation of law, whether willful or negligent".

Next we must determine whether "his own" includes the employer as well as the employee. In Tunkl, supra, the California court held that its equivalent statute applies equally to a "corporation's 'own' liability and vicarious liability resulting from negligence of agents." 383 P.2d at 448, 32 Cal.Rptr. at 40. Likewise, we hold that our statute applies to a corporation's vicarious liability.

To summarize, § 28-2-702, MCA, is interpreted to mean that no person or corporation may contract to exempt himself or itself from responsibility for his, its or its employee's: (1) fraud; (2) willful injury to the property or person of another; (3) negligent or willful violation of law.

But, what is meant by the term "violation of law, whether willful or negligent?" The California Supreme Court has not resolved this question. However, the legal meaning of the terms contained in the phrase is undisputed. Law consists of constitutions, Wickham v. Grand River Dam Authority (Okl. 1941), 118 P.2d 640, 643; statutes and case law, Erie Railroad Co. v. Tompkins (1938), 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188, 1194; as well as common law, Fenn v. Holme (1859), 62 U.S. 481, 486, 21 How. 481, 486, 16 L.Ed. 198, 200. Thus, pursuant to the clear and unambiguous language of § 28-2-702, MCA, an entity cannot contractually exculpate itself from liability for willful or negligent violations of legal duties, whether they be rooted

8

in statutes or case law. We therefore determine the statute has application in this setting.

The dissent contends that § 28-2-702, MCA, invalidates only those waivers which affect the public. This contention is contrary to the specific words of the statute. The statute itself states that any contract which exempts anyone from responsibility for fraud, willful injury or the willful or negligent violation of law, is against the policy of the law. Nothing in the statute limits its application to contracts which involve the public interest. Thus, even a waiver which constitutes a private contract between private individuals is invalid, and in violation of public policy, if it seeks to exempt one from liability for those actions specified in the statute.

Contrary to PreFab's allegations, Congress has not preempted this area of law by enacting the Interstate Commerce Act. The relevant statute is 49 U.S.C. § 10722(d)(2) (1982), which states in pertinent part:

> A common carrier providing transportation subject to the jurisdiction of the Commission . . . may provide transportation without charge for officers and employees (and their families) of that carrier, another carrier (by exchange of passes or tickets), or a telegraph, telephone, or cable company.

This section allows PreFab to provide free transportation to certain specified individuals, including appellant. It does not regulate the liability which potentially accompanies the provision. Therefore, Montana is free to legislate with respect to the liability incurred. Eisenman Seed Co. v. Chicago, Milwaukee, St.Paul and Pacific Railroad (1973), 161 Mont. 197, 203, 505 P.2d 81, 84.

Finally, again contrary to PreFab's allegation, Illinois law should not control. We recognize that the contract between PreFab and Miller originated in Illinois. However,

9

§ 28-2-702, MCA, delineates the types of contracts Montana will refuse to recognize regardless of their origin.

We remand this cause to the trial court. If liability is found based upon a willful or negligent violation of law, the waiver as it pertains to PreFab, Davis and Miller violates § 28-2-702, MCA, and may not be relied on by any of the three defendants.

Reversed and remanded.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

10

Mr. Justice Fred J. Weber dissents as follows:

I concur with the majority opinion and its abolition of the doctrine of interspousal tort immunity. I dissent from its conclusion with regard to the pre-release form.

I disagree with the majority conclusion that a negligent violation of law by PreFab, Davis or Miller constitutes a violation of § 28-2-702, MCA, so that the waiver may not be relied on.

The majority opinion points out that this Court has never had occasion to interpret § 28-2-702, MCA, and further points out that the statute was adopted verbatim from California in 1895. The majority then concludes that the interpretation of the statute by the California Supreme Court in Tunkl is persuasive. Unfortunately the rationale of the majority opinion actually is strikingly different from the rationale in Tunkl. The majority concludes that under § 28-2-702, MCA, an entity cannot contractually exculpate itself from liability for negligent violations of legal duties whether they are rooted in statutes or case law. Tunkl approached the same code section with an entirely different rationale.

Tunkl emphasized that the code section had been interpreted in various ways by California cases, some strictly, some very liberally so that the authority for Tunkl under California cases was limited. Tunkl did emphasize that all of the California cases consistently held that the exculpatory provision of the code section would stand only if the public interest was involved. Tunkl then set forth a number of factors to be considered in determining whether or not the public interest was effected by the release agreement. Included are such factors as whether it is a business

11

which is suitable for public regulation; whether a party is performing a service of great importance to the public which is practically necessary to the public; whether a party is willing to perform this for any member of the public; whether there is an essential nature of services being performed and a decisive advantage in bargaining strength; whether there is superior bargaining power and a standardized adhesion contract; and whether a party is placed under the control of the party to be exculpated. Clearly the present case does not set forth facts justifying the application of the public interest rule under Tunkl. In other words, if the rationale of Tunkl were applied in the present case, the holding would be contrary to the majority opinion here.

In Tunkl the California court distinguished private voluntary transactions from public interest cases and stated:

> While obviously no public policy opposes private, voluntary transactions in which one party, for a consideration, agrees to shoulder a risk which the law would otherwise have placed upon the other party, the above circumstances pose a different situation.

Tunkl, 383 P.2d at 446. This Court applied the rationale of Tunkl in Haynes v. County of Missoula (1973), 163 Mont. 270, 517 P.2d 370. Even though this Court was interpreting § 28-2-702, MCA, it followed the public interest rationale of Tunkl and quoted extensively from Tunkl. In addition, this Court in Haynes referred to the provision in Restatement, Contracts, § 575 making an exemption from liability illegal if a party is charged with the duty of public service, and the bargain relates to negligence in the performance of any part of its duty to the public, for which it has received or been promised compensation. Without going into Haynes in any more detail, it is clear that this Court adopted the public interest rationale of Tunkl. I therefore conclude

12

that neither <u>Tunkl</u> nor <u>Haynes</u> is authority for the position taken in the present majority opinion.

I dissent from the primary conclusion of the majority opinion that an entity cannot contractually exculpate itself from liability for either willful or negligent violations of legal duties whether they are rooted in statutes or in case law, under the provision of § 28-2-702, MCA. As I look at this statute which was enacted by our Montana Legislature in 1895, I note that it addresses contracts which are against the policy of the law of this state. Section 28-2-702, MCA, states that all of the following contracts are against the policy of Montana: contracts which exempt anyone from responsibility for fraud, willful injury to person or property, or violation of law, whether willful or negligent. It is clear that in order to discourage anyone exempting himself for his own fraud, such a provision is appropriate. In a similar manner, it is appropriate to eliminate an exemption for willful injury to person or property. This leaves the last portion which is the violation of law, whether willful or negligent. Again there is a clear policy apparent in a prohibition which applies to willful violation of law. That element is not present in this case. This leaves only the question of the negligent violation of law. I conclude that negligent torts were not contemplated by this section.

I invite the attention of our Montana Legislature to the majority opinion in order that it may determine if it approves of the interpretation of § 28-2-702, MCA.

_____
Justice

Mr. Justice L. C. Gulbrandson joins in the foregoing dissent of Mr. Justice Fred. J. Weber.

_L. C. Gulbrandson_
Justice

14