No. 97-120

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 17

MONTANA PUBLIC EMPLOYEE'S ASSOCIATION,
a Montana non-profit Corporation; on behalf of, as their
union, Tim Fellows, Jerry Brown, and all other employees
of the Montana Department of Transportation similarly
situated,

Plaintiffs and Appellants,

v.

MONTANA DEPARTMENT OF TRANSPORTATION,

Defendant and Respondent.

APPEAL FROM:        District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Jeffrey M. Sherlock, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Carter N. Picotte, Helena, Montana

For Respondent:

Mike Pickard, Human Resources Attorney, Montana Department of
Transportation, Helena, Montana

Submitted on Briefs: May 15, 1997

Decided:   January 30, 1998
Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1     The Montana Public Employee's Association (MPEA) appeals an order of the
District Court for the First Judicial District, Lewis and Clark County, granting summary
judgment in favor of the Montana Department of Transportation (MDT) in a controversy

between the parties over the status of the "District Construction Allowance" (DCA) paid to certain MDT employees.  We reverse and remand.

¶2      The sole issue raised on appeal is whether the District Court erred in determining that the DCA may not be included in the base pay of MDT employees for the purpose of calculating overtime.

Factual and Procedural Background

¶3      MDT employs a limited number of individuals in its construction bureau whose job sites change from time to time.  For that reason, reporting stations have been established in various locations so that employees can report to work at a location closer to their homes.  MDT then provides transportation from the reporting station to the actual work site during work hours.

¶4      MPEA acts as a labor union on behalf of public employees.  MPEA and MDT negotiated a collective bargaining agreement on September 27, 1991, wherein they agreed that an allowance, the DCA, would be paid to certain construction bureau employees based upon the distance they travel from their home to the reporting station.  This agreement was reaffirmed by the parties on several occasions, the last, prior to the filing of the complaint, being May 10, 1994.  Eligibility for the DCA is based on the relationship of the reporting station to the central post office of the employee's home town.  Employees who reside in reasonable proximity to a reporting station or work site do not receive the DCA.

¶5      The DCA is found in a supplement to the collective bargaining agreement between the parties.  It provides, in part:
    1. Purpose and Application
        a.   Purpose: The purpose of this policy is to provide an allowance for District Construction personnel who are assigned to a project by the appropriate authority.  This allowance is intended to accommodate special circumstances of employees in the District Construction offices who must report to different reporting stations.  It is not provided as per diem, and employees are not considered to be in a travel status anytime they are covered under this policy.
        b.   Application: This policy will apply only to District Construction personnel who are subject to assignment to projects which require them to report to a designated reporting station in excess of twenty (20) miles one way from the central post office in the community in which he/she resides, or if the employee prefers a rural location, he/she will be considered to be residing at the central post office in the nearest city, town or community for mileage calculations only.
        c.   "Designated Reporting Station" means a collecting point for state vehicles, an office located in a town, the field office, the district office or other location serving the best interest of the Department.  Reporting stations will be established where reasonable accommodations are available.  Management will be the sole determiner of þreasonable accommodations.þ
        d.   "Designated Shift" means a shift in which the employee

              actually works two (2) or more hours with the remainder of
              the regular shift in a pay status.

Supplemental to Master Con
tract for Department of Transportation Non-Maintenance Unit
(May 10, 1994), pp. 8-9.

¶6     On May 9, 1995, MPEA filed a complaint against MDT seeking a Declaratory
Judgment and alleging that the DCA should be treated as an element of an employeeþs
base pay for purposes of calculating overtime compensation.  On January 17, 1996,
MPEA filed an amended complaint basing its claim, in part, on the provisions of the Fair
Labor Standards Act (FLSA), 29 U.S.C. §§ 201 through 219.

¶7     MPEA and MDT stipulated to the facts and agreed that the FLSA controls.  The
parties filed cross motions for summary judgment.  On December 10, 1996, the District
Court entered its Order on Motions for Summary Judgment wherein the court concluded
that since the DCA was reimbursement for travel expenses, it could not be included in
an employeeþs base pay for purposes of calculating overtime compensation.  MPEA
appealed.

## Standard of Review

¶8     Our standard of review in appeals from summary judgment rulings is de novo.
Motarie v. N. Mont. Joint Refuse Disposal (1995), 274 Mont. 239, 242, 907 P.2d 154,
156 (citing Mead v. M.S.B., Inc. (1994), 264 Mont. 465, 470, 872 P.2d 782, 785).
When we review a district courtþs grant of summary judgment, we apply the same
evaluation as the  district court based on Rule 56, M.R.Civ.P.  Bruner v. Yellowstone
County (1995), 272 Mont. 261, 264, 900 P.2d 901, 903.  In Bruner, we set forth our
inquiry:

> The movant must demonstrate that no genuine issues of material fact exist.
> Once this has been accomplished, the burden then shifts to the non-moving
> party to prove, by more than mere denial and speculation, that a genuine
> issue does exist.  Having determined that genuine issues of fact do not
> exist, the court must then determine whether the moving party is entitled to
> judgment as a matter of law.  We review the legal determinations made by
> a district court as to whether the court erred.

Bruner, 900 P.2d at 903 (citations omitted).

## Discussion

¶9     Whether the District Court erred in determining that the DCA may not be
included in the base pay of MDT employees for the purpose of calculating overtime.

¶10    The parties agree that there are no factual disputes in this case and that the FLSA
is  controlling.  The FLSA is a federal statute establishing minimum wage, overtime pay,
child labor, and equal pay requirements.  29 C.F.R. § 778.0 (1997).  The Department
of Labor (DOL) is responsible for determining the operative definitions of the terms used
in the FLSA through interpretive regulations and as a general rule, DOL regulations are
entitled to judicial deference and are the primary source of guidance for determining the
scope and extent of exemptions to the FLSA.  Spradling v. City of Tulsa, Okl. (10th Cir.
1996), 95 F.3d 1492, 1495 (citing Udall v. Tallman (1965), 380 U.S. 1, 16, 85 S.Ct.

792, 801, 13 L.Ed.2d 616).

¶11    Exemptions from or exceptions to the FLSA's requirements are to be narrowly construed against the employer asserting them.  Donovan v. Brown Equipment & Service Tools, Inc. (5th Cir. 1982), 666 F.2d 148, 153 (citing Arnold v. Ben Kanowsky, Inc. (1960), 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393).  Furthermore, the employer bears the burden of showing that the employee fits "plainly and unmistakenly within the exemption's terms.þ  Spradling, 95 F.3d at 1495 (citing Aaron v. City of Wichita (10th Cir. 1995), 54 F.3d 652, 657 cert denied ___ U.S. ___, 116 S.Ct. 419, 133 L.Ed.2d 336; Reich v. State of Wyoming (10th Cir. 1993), 993 F.2d 739, 741).

¶12    Under the FLSA,
    no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1) (1997) (emphasis added).  An enterprise þengaged in commerce or in the production of goods for commerceþ includes an enterprise that "is an activity of a public agency," 29 U.S.C. § 203(s)(1)(C) (1997), and a "public agency" includes the government or any agency of a state or a political subdivision of a state, 29 U.S.C. § 203(x) (1997).

¶13    Additionally, "regular rate" is defined in the FLSA as follows:
    As used in this section the "regular rate" at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, but shall not be deemed to include--
            . . .
        (2) payments made for occasional periods when no work is
    performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause; reasonable payments for traveling expenses, or other expenses, incurred by an employee in the furtherance of his employer's interests and properly reimbursable by the employer; and other similar payments to an employee which are not made as compensation for his hours of employment; . . .

29 U.S.C. § 207(e) (1997).  Although the "regular rate" is a rate per hour, the FLSA does not require employers to compensate employees on an hourly rate basis; their earnings may be determined on a piece-rate, salary, commission, or other basis.  29 C.F.R. § 778.109 (1997).  The regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid.  29 C.F.R. § 778.109 (1997).

¶14    In granting summary judgment in favor of MDT, the District Court concluded that the DCA is not made as compensation for hours of employment or hours worked because employees receive the DCA regardless of the number of hours worked, so long as they work more than two hours in a shift.  The court also concluded that the DCA appeared to be a form of reimbursement for travel expenses to employees and, because the FLSA

provides that reimbursement for travel expenses is not to be included in an employeeþs regular rate of pay for purposes of calculating overtime, the DCA may not be included in the base pay of MDT employees.  The District Court based its conclusions on a review of numerous time sheets of employees, submitted by MPEA as exhibits, wherein the DCA funds were recorded under a section entitled þTravel Expense Claim.þ  Moreover, the court determined that the employees do not claim other statutorily created travel reimbursement for mileage and that the DCA was directly linked with the distance the employee had to travel to the reporting station.

¶15     MPEA maintains that the District Court erred in concluding that the DCA falls within the statutory exception for travel expenses contained in 29 U.S.C. § 207(e)(2). MPEA contends that the DCA is not an expense reimbursement under the FLSA because the travel expense is not incurred on the employerþs behalf or for the employerþs benefit or convenience.  Hence, MPEA argues, since the regular rate includes all remuneration paid to an employee unless a specific exception is provided for in the FLSA and since the DCA does not fall within one of the statutory exceptions, the DCA may not be excluded from the þregular rateþ for the purpose of calculating overtime compensation.

¶16     MDT contends, on the other hand, that not only does the DCA fall within the statutory exception for travel expenses found at 29 U.S.C. § 207(e)(2), but it also falls within the exception for "other similar payments to an employee which are not made as compensation for his hours of employment" also found at 29 U.S.C. § 207(e)(2).  The MDT bases its contention on the fact that the DCA is not compensation for hours worked since qualified employees are paid the DCA whether they work two hours in a shift or eight hours.

¶17     "It is important to determine the scope of  [the exclusions under the FLSA] since all remuneration for employment paid to employees which does not fall within one of these seven exclusionary clauses must be added into the total compensation received by the employee before his regular hourly rate of pay is determined."  29 C.F.R. § 778.200(c) (1997).  See also Brock v. Two R Drilling Co., Inc. (5th Cir. 1985), 772 F.2d 1199, 1200.

¶18     The DOL interprets the exception for travel expenses found in 29 U.S.C. § 207(e)(2) as follows:
> Where an employee incurs expenses on his employer's behalf or where he is required to expend sums solely by reason of action taken for the convenience of his employer, section 7(e)(2) is applicable to reimbursement for such expenses.  Payments made by the employer to cover such expenses are not included in the employeeþs regular rate (if the amount of the reimbursement reasonably approximates the expenses incurred).  Such payment is not compensation for services rendered by the employees during any hours worked in the workweek.

29 C.F.R. § 778.217(a) (1997).  However,

> [t]he expenses for which reimbursement is made must in order to merit exclusion from the regular rate under this section, be expenses incurred by the employee on the employerþs behalf or for his benefit or convenience. If the employer reimburses the employee for expenses normally incurred by the employee for his own benefit, he is, of course, increasing the employee's regular rate thereby.  An employee normally incurs expenses

> in traveling to and from work, buying lunch, paying rent, and the like. If the employer reimburses him for these normal everyday expenses, the payment is not excluded from the regular rate as þreimbursement for expenses.

29 C.F.R. § 778.217(d) (1997) (emphasis added).

¶19    In the case before us, the expenses were not incurred on MDT's behalf or for MDT's benefit or convenience. The DCA is reimbursement for normal everyday expenses incurred by the employee for his own benefit, namely traveling to and from work. Thus, the DCA may not be excluded from the regular rate as reimbursement for travel expenses under that provision of 29 U.S.C. § 207(e)(2).

¶20    Nor may MDT be relieved of liability under the Portal to Portal Act, 29 U.S.C. §§ 251 through 262. As a general rule, the Portal to Portal Act relieves an employer from liability or punishment under the FLSA for failing to pay an employee minimum wages or overtime compensation for "walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform. . . ." 29 U.S.C. § 254(a) (1997). "The effect on the Fair Labor Standards Act of the various provisions of the Portal Act must necessarily be determined by viewing the two acts as interelated parts of the entire statutory scheme for the establishment of basic fair labor standards." 29 C.F.R. § 790.2(a) (1997). Under the Portal to Portal Act, an employer is not relieved of liability or punishment if the activity is compensable by either "an express provision of a written or nonwritten contract in effect, at the time of such activity, between such employee, his agent, or collective-bargaining representative and his employer," 29 U.S.C. § 254(b)(1) (1997), as is the case here.

¶21    MDT argues that the parties had not intended, under the collective bargaining agreement, to include the DCA in the calculations for overtime compensation. However, "[t]here is no collective-bargaining exemption from the FLSA." Reich v. Interstate Brands Corp. (7th Cir. 1995), 57 F.3d 574, 578; Featsent v. City of Youngstown (6th Cir. 1995), 70 F.3d 900, 905.

¶22    MDT also argues that, even if the DCA does not qualify for exclusion under the travel expense exception to the FLSA found in 29 U.S.C. § 207(e)(2), it may still be excluded from the regular rate for the purpose of calculating overtime because it falls within the exclusion, also found in 29 U.S.C. § 207(e)(2), for "other similar payments to an employee which are not made as compensation for his hours of employment." We reject MDT's argument.

¶23    To qualify for exclusion under this third and last clause of 29 U.S.C. § 207(e)(2), the DCA must "be 'similar' in character to the payments specifically described in section 7(e)(2)." 29 C.F.R. § 778.224(a) (1997). MDT has not contended that the DCA is similar to the payments excluded under the first clause of 29 U.S.C. § 207(e)(2) "for occasional periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause," and we have already shown that the DCA is not reimbursement for travel or other expenses under the second clause of 29 U.S.C. § 207(e)(2).

¶24    Instead, MDT contends that the DCA falls within the exceptions under 29 U.S.C. § 207(e)(2) because of the phrase therein that the excepted payments are "not made as compensation for [an employees] hours of employment." MPEA argues that the DCA is similar because it is not compensation for hours worked since qualified employees are paid the DCA whether they work two hours in a shift or eight hours. We find this argument unpersuasive. "Section 7(e)(2) does not exclude every payment not measured by hours of employment from the regular rate." Featsent, 70 F.3d at 904 (citing Reich, 57 F.3d at 577).

> It is clear that the ["other similar payments"] clause was not intended to permit the exclusion from the regular rate of payments such as bonuses or the furnishing of facilities like board and lodging which, though not directly attributable to any particular hours of work are, nevertheless, clearly understood to be compensation for services.

29 C.F.R. õ§ 778.224(a) (1997).

¶25    Therefore, we hold that the MDT has not met its burden of showing that the DCA fits "plainly and unmistakenly" within one of the statutory exceptions to the FLSA's requirements. Spradling, 95 F.3d at 1495. Consequently, the DCA must be included in the regular rate for the purpose of calculating overtime. This does not mean, however, that the time spent traveling to and from work must also be counted as hours worked.

> An employee who travels from home before his regular workday and returns to his home at the end of the workday is engaged in ordinary home to work travel which is a normal incident of employment. This is true whether he works at a fixed location or at different job sites. Normal travel from home to work is not worktime.

29 C.F.R.§ 785.35 (1997). Ordinary travel from home to work "need not be counted as hours worked even if the employer agrees to pay for it." 29 C.F.R. § 785.34 (1997) (citing Tennessee Coal, Iron & R.R. Co. v. Muscoda Local (1944), 321 U.S. 590, 64 S.Ct. 698, 88 L.Ed. 949; Anderson v. Mt. Clemens Pottery Co. (1946), 328 U.S. 680, 66 S.Ct. 1187, 90 L.Ed. 1515; Walling v. Anaconda Copper Mining Co. (1946), 66

¶26    Accordingly, we hold that the District Court erred in determining that the DCA may not be included in the base pay of MDT employees for the purpose of calculating overtime.

¶27    Reversed and remanded for further proceedings consistent with this opinion.

                                        /S/   JAMES C. NELSON

We Concur:

/S/  J. A.  TURNAGE
/S/  WILLIAM E. HUNT, SR.
/S/  JIM REGNIER
/S/  TERRY N. TRIEWEILER