No. 97-649

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 216

FIVE U'S, INCORPORATED,

Plaintiff and Appellant,

v.

BURGER KING CORPORATION, BURGER

KING OPERATING LIMITED PARTNER-

SHIP, and QSC, II, INC.,

Defendants and Respondents.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

Honorable Thomas C. Honzel, Judge Presiding.


COUNSEL OF RECORD:


For Appellant:


Andrew J. Utick, Utick & Grosfield, Helena, Montana


For Respondents:


J. Robert Planalp, Landoe, Brown, Planalp & Braaksma, Bozeman,

Montana

Gary L. Walton, Poore, Roth & Robinson, Butte, Montana

Stuart L. Kellner, Hughes, Kellner, Sullivan & Alke, Helena, Montana

Submitted on Briefs: July 16, 1998

Decided: September 3, 1998

Filed:

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

¶ **This is an action for damages for the negligent destruction of a Burger King restaurant by fire. Five U's, Incorporated, appeals from a summary judgment of the First Judicial District Court, Lewis and Clark County, in favor of defendants Burger King Corporation (BKC) and Burger King Operating Limited Partnership (BKOLP). We affirm.**

¶ **The issues are:**

¶ **1. Whether the District Court erred in granting summary judgment with respect to the claim for damages for the destruction of the restaurant building by fire; and**

¶ **2. Whether the court erred in granting summary judgment with respect to the claim for damages for loss of rentals while the restaurant was being rebuilt.**

¶ **Five U's is a Montana corporation which owns the real property and building used as the Burger King restaurant in Helena, Montana. Five U's leased the property and building to BKC, a Florida corporation. Their lease agreement required BKC to maintain fire and casualty insurance on the property. Under the agreement, Five U's was required to rebuild in the event of fire or other casualty.**

¶ **In February 1986, BKC assigned its interest in the lease to BKOLP. A franchisee, QSC, subleased the property and owned the restaurant equipment. Under the sublease, QSC assumed responsibility to insure the restaurant against fire and other casualties.**

¶ **On June 26, 1992, a grease fire destroyed the Helena Burger King restaurant. Following the fire, QSC and Five U's agreed to distribute the $408,500 in insurance proceeds first to Five U's to allow it to rebuild, with the remaining balance to QSC to allow it to acquire new restaurant equipment. The restaurant reopened on December 12, 1992.**

¶ **Although the cost of rebuilding the restaurant was covered by the fire insurance, Five U's nevertheless filed this tort action in June 1994 to recover the cost of removing and replacing the Burger King building and the rental income lost while the restaurant was being rebuilt. The District Court granted summary judgment in favor of BKC and BKOLP. The court also granted partial summary judgment in favor of QSC, leaving as the only issue for trial whether Five U's was entitled to lost rentals from QSC. When Five U's later agreed to dismiss QSC from the suit, summary judgment became final. Five U's appeals.**

Standard of Review

¶ **Under Rule 56(c), M.R.Civ.P., summary judgment shall be rendered "if the**

pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." This Court uses de novo review to determine whether a trial court correctly granted summary judgment. *Public Employees' Ass'n v. Dept. of Transp.*, 1998 MT 17, ¶8, 954 P.2d 21, ¶8.

Issue 1

¶ Did the District Court err in granting summary judgment with respect to the claim for damages for the destruction of the restaurant building by fire?

¶ The lease agreement between Five U's and BKC required BKC, as the lessee, to keep the building insured "for the benefit of Lessor and Lessee" against loss or damage by fire. Under its sublease, QSC undertook this responsibility to provide fire insurance. The District Court ruled that the insurance proceeds paid to Five U's from the policy purchased by QSC were paid on behalf of all of the defendants, due to the nature of their relationship. The court further ruled that having been fully compensated by insurance, Five U's is not entitled, as a matter of law, to be compensated a second time for the same loss. The court stated, "Montana courts have consistently held that when a plaintiff has been fully compensated for his injury, he is not entitled to an additional damage award under any legal theory." The court cited as authority for this principle *Boyken v. Steele* (1993), 256 Mont. 419, 847 P.2d 282, and *State ex rel., Deere & Co. v. District Court* (1986), 224 Mont. 384, 730 P.2d 396.

¶ Five U's contends that the District Court was in error because *Boyken* and *Deere* involved joint tortfeasors and limited their holdings to liability as between joint tortfeasors. The effect of insurance reimbursement under a contract obligation was not an issue in either case. Five U's is correct that, in its statement quoted above, the District Court extended the holdings of *Boyken* and *Deere*.

¶ In entering summary judgment, the District Court also cited *Publix Theatres Corporation v. Powell* (Tex. 1934), 71 S.W.2d 237, as persuasive authority. In that case, lessee Powell negligently caused a fire which destroyed lessor Publix Theatres Corporation's building. After receiving payment from Powell's insurance company for the market value of the building, Publix sued Powell for his negligence in

**allowing the building to catch on fire. The court rejected Publix's contention that it should be allowed to recover from Powell despite having received full compensation from the insurance company. In its reasoning, the court stated:**

> When so destroyed, lessor's loss was the value of the destroyed property--that was his interest in the insurance and when paid, of course, satisfied the loss, if the loss equalled or was less than the amount of insurance. To permit the lessor to keep the insurance money, in such a case, and then collect from the tenant, would be a double recovery not sanctioned by law. If the fire resulted from the tenant's negligence, the tenant is liable for the result of that negligence, but, when he has provided for the resulting damages, either by payment himself or by payment through an insuring company, he has satisfied the claim of the damaged party.

*Publix*, 71 S.W.2d at 241. Like the building owner in *Publix*, Five U's has been fully reimbursed for the cost of replacing the building destroyed in the fire.

**¶ Although Five U's criticizes *Publix* as dated, the reasoning set forth therein remains sound. The Restatement (Second) of Torts § 920A(1)(1977), states, "A payment made by a tortfeasor or by a person acting for him to a person whom he has injured is credited against his tort liability, as are payments made by another who is, or believes he is, subject to the same tort liability." The first comment to this Restatement section explains:**

> *Payments by or for defendant.* If a tort defendant makes a payment toward his tort liability, it of course has the effect of reducing that liability. This is also true of payments made under an insurance policy that is maintained by the defendant, whether made under a liability provision or without regard to liability, as under a medical-payments clause. This is true also of a payment by another tortfeasor of an amount for which he is liable jointly with the defendant or even by one who is not actually liable to the plaintiff if he is seeking to extinguish or reduce the obligation.

Restatement (Second) of Torts § 920A(1), cmt. a (1977).

¶ **Five U's asserts that comment a to § 920A does not apply to this case. Instead, it argues that comment b, concerning the collateral source rule, controls. That comment states:**

> *Benefits from collateral sources.* Payments made or benefits conferred by other sources are known as collateral-source benefits. They do not have the effect of reducing the recovery against the defendant. The injured party's net loss may have been reduced correspondingly, and to the extent that the defendant is required to pay the total amount there may be a double compensation for a part of the plaintiff's injury. But it is the position of the law that a benefit that is directed to the injured party should not be shifted so as to become a windfall for the tortfeasor. If the plaintiff was himself responsible for the benefit, as by maintaining his own insurance or by making advantageous employment arrangements, the law allows him to keep it for himself.

Restatement (Second) of Torts § 920A, cmt. b (1977).

¶ **The collateral source rule states that benefits received by a plaintiff from a source wholly independent of and collateral to the wrongdoer will not diminish the damages otherwise recoverable from the wrongdoer.** *Tribby v. Northwestern Bank of Great Falls* **(1985), 217 Mont. 196, 209, 704 P.2d 409, 417. Five U's asserts that when the collateral source rule is correctly applied to the facts of this case, it should be allowed a double recovery. It reasons that payment under the fire insurance policy was not made toward anyone's tort liability, but toward contract liability. Five U's further alleges that it was "responsible for" the fire insurance "by making an advantageous lease arrangement whereby the franchisee . . . paid the fire insurance premium as additional rent for the premises."**

¶ **In that allegation, Five U's is totally off the mark. Five U's was no more "responsible for" fire insurance on the Burger King restaurant property under this lease than it was for making rental payments to itself.**

¶ **Moreover, payment for the insurance policy was not wholly independent of and collateral to BKC and BKOLP. QSC purchased fire insurance for the Burger King**

restaurant pursuant to its assumption of BKC's duty to provide such insurance under the lease with Five U's. Although Five U's consented to BKC's assignment of the lease to BKOLP and the sublease to QSC, Five U's did not thereby release BKC from its lease obligations, including the purchase of fire insurance. If fire insurance was inadequate or lacking, Five U's would assuredly have wanted to hold both BKC and its assignee BKOLP liable for breach of the lease provision requiring BKC to keep the building insured.

¶ We conclude that the payment to Five U's under insurance purchased by alleged cotortfeasor QSC should be credited against the tort liability of BKC and BKOLP. We therefore hold that the District Court did not err in granting summary judgment for BKC and BKOLP on the claim for damages for destruction of the Burger King restaurant by fire.

Issue 2

¶ Did the court err in granting summary judgment with respect to the claim for damages for loss of rentals while the restaurant was being rebuilt?

¶ The lease contract between Five U's and BKC provided:

> If during the term of this lease the building, improvements in or appurtenant to the demised premises shall be destroyed or damaged by fire, storm, lightning, earthquake or other casualty, rental shall abate in such proportion as use of the premises by Lessee has been destroyed, and Lessor shall restore premises to substantially the same condition as before damage as speedily as practical; whereupon, full rental shall commence.

Paragraph 12, Agreement to Build and Lease.

¶ Five U's argues that the measure of damages in this tort action is not limited by the terms of the lease contract. It cites *Miller v. Fallon County* (1986), 222 Mont. 214, 721 P.2d 342, for the proposition that a party cannot contractually exculpate itself from liability for willful or negligent violation of legal duties.

¶ In *Miller*, the plaintiff had waived, in writing, all claims for liability of the company

in whose vehicle she was subsequently injured while a passenger. This Court determined that the waiver agreement violated the policy of the law and therefore could not be relied upon. In other words, the contract was declared invalid as an illegal contract. In the present case, as the District Court noted, the contract does not seek to exculpate BKC from all liability for negligence; it simply includes a rent abatement clause for periods during which the building is rendered unusable. There is no provision which violates the policy of the law.

¶ When the language of a legal contract is clear and unambiguous on its face, it is the duty of the courts to enforce the contract as the parties intended. *First Sec. Bank v. Vander Pas* (1991), 250 Mont. 148, 153, 818 P.2d 384, 387. Here, Paragraph 12 of the lease makes no distinction as to the cause of a fire, and therefore requires rent to abate regardless of whether the fire was caused by events unrelated to BKC or by BKC's negligence. Five U's may not circumvent the intent of the contract by suing BKC and BKOLP in negligence to recover rent for the period for which the lease clearly provided that rent was to abate.

¶ We conclude that the lease should be enforced as written, abating rental payments when use of the premises has been destroyed. We hold that the District Court did not err in granting summary judgment to BKC and BKOLP with respect to the claim for damages for loss of rent payments while the restaurant was being rebuilt.

¶ We affirm the decision of the District Court.


/S/ J. A. TURNAGE


We concur:


/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ KARLA M. GRAY

Justice W. William Leaphart did not participate.

Justice William E. Hunt, Sr. specially concurs and dissents.

¶ **I concur in the Court's opinion on issue one. I dissent from that opinion on issue two. The Court has mixed apples and oranges in analyzing this issue. Appellant's complaint asserts negligence on the part of Respondents for the destruction of its property and seeks to recover the lost rental, or use value, of the property for which it was denied during the period of re-construction. An action to recover loss of use is a tort and is governed by tort law. In focusing on the rent abatement clause of the parties' contract, and concluding that it precluded Appellant's recovery of loss of use, the majority erroneously used contract law to decide Appellant's tort claim. The rent abatement clause of the contract is irrelevant in deciding Appellant's entitlement to loss of use. Had Appellant sought damages under a breach of contract theory, then the rent abatement clause would be relevant.**

¶ **Section 27-1-317, MCA, prescribes the damages recoverable in a tort action. That statute provides:**

> For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not.

Because Appellant brought this action in tort, I would reverse the decision of the District Court on issue two and remand for further findings concerning the reasonable use value of the property during the period of re-construction to which Appellant would be entitled pursuant to § 27-1-317, MCA. I dissent from our failure to do so.

/S/ WILLIAM E. HUNT, SR.

Justice Terry N. Trieweiler:

I join in the concurring and dissenting opinion of Justice Hunt.

/S/ TERRY N. TRIEWEILER