DA 16-0745

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 238

FILED

09/26/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0745

ZIRKELBACH CONSTRUCTION, INC.,

        Plaintiff and Appellant,

    v.

DOWL, LLC dba DOWL HKM,

        Defendant and Appellee.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DV-14-1061
Honorable Michael G. Moses, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            W. Scott Green (Argued), Daniel L. Snedigar (Argued), Patten, Peterman,
            Bekkedahl & Green, PLLC, Billings, Montana

        For Appellee:

            Matthew F. McLean (Argued), Kelsey E. Bunkers, Griffin B. Stevens,
            Crowley Fleck, PLLP, Bozeman, Montana

                      Argued:  July 12, 2017
                Submitted:  July 18, 2017
                    Decided:  September 26, 217

Filed:

                          _____
                                  Clerk

Justice Michael E Wheat delivered the Opinion of the Court.

¶1     Zirkelbach Construction, Inc. (Zirkelbach) appeals from the order of the Thirteenth Judicial District Court, Yellowstone County, granting DOWL, LLC's (DOWL) motion for partial summary judgment.  We affirm.

¶2     We restate the issue on appeal as follows:

*Did the District Court err in granting DOWL's motion for partial summary judgment?*

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3     This case arises out of the construction of a FedEx Ground facility (Facility) in Billings, Montana.  SunCap Billings, LLC (SunCap) is the owner of the real property upon which the Facility was to be constructed.  SunCap hired Zirkelbach as the general contractor to construct the Facility.  Zirkelbach is an experienced construction company maintaining offices in Florida, South Carolina and Montana.  The construction of the Facility was Zirkelbach's forty-second project for FedEx.  Zirkelbach hired DOWL to provide design work for the Facility.  Likewise, DOWL is an experienced, professional design company.

¶4     Zirkelbach and DOWL entered into an agreement[1] for professional services (Agreement).  Both parties presented their own form contracts, but ultimately, DOWL's form contract was agreed upon and signed by both parties.  The Agreement provided for Zirkelbach to pay DOWL $122,967 for services rendered.  Subsequently, the parties

---

[1] The parties have stipulated to the accuracy of the documents memorializing the Agreement.

2

made several addenda to the Agreement. The subsequent addenda raised the fee for any additional services being rendered by DOWL. DOWL's final fee for its services relating to the design of the Facility totaled approximately $665,000.

¶5     Sub-section 5(D) of the Agreement between Zirkelbach and DOWL provides as follows:

> **D. Consequential Damages/Limitation of Liability**
> To the fullest extent permitted by law, DOWL HKM and Client waive against each other, and the other's employees, officers, directors, agents, insurers, partners, and consultants any and all claims for or entitlement to special, incidental, indirect, or consequential damages arising out of, resulting from, or in any way related to the Project and agree that DOWL HKM's total liability to Client under this Agreement shall be limited to $50,000.

This sub-section was set forth in the initial Agreement and no subsequent addenda altered this provision.

¶6     Initially, Zirkelbach filed suit on July 30, 2014, against Knife River, a subcontractor employed by Zirkelbach, over construction liens relating to the Facility. Nearly six months after filing suit, Zirkelbach filed a third-party complaint[2] against DOWL alleging claims of negligence and breach of contract. Zirkelbach claims that due to DOWL's negligence and breach of contract, Zirkelbach incurred $1,218,197.93 resolving problems caused directly by DOWL's design plans.

¶7     On August 22, 2016, DOWL filed a motion for partial summary judgment arguing, pursuant to the Agreement's § 5(D) provision, that DOWL cannot be liable to

---

[2] In response to Zirkelbach's suit, Knife River filed a counterclaim and third-party complaint against Zirkelbach and several other companies involved in the construction of the Facility.

3

Zirkelbach under the contract for any amount exceeding $50,000. Zirkelbach countered that the contractual limitation of liability found within § 5(D) violates § 28-2-702, MCA, and therefore is unenforceable. On November 16, 2016, the District Court granted DOWL's motion for partial summary judgment. Zirkelbach filed a timely appeal.

## STANDARD OF REVIEW

¶8 We review a district court's grant of summary judgment de novo, applying the same criteria of M. R. Civ. P. 56 as the district court. *Pilgeram v. GreenPoint Mortg. Funding, Inc.*, 2013 MT 354, ¶ 9, 373 Mont. 1, 313 P.3d 839. We review a district court's conclusions of law to determine whether they are correct and its findings of fact to determine whether they are clearly erroneous. *Pilgeram*, ¶ 9. Under Rule 56(c), summary judgment will be granted if the moving party can show there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Roe v. City of Missoula*, 2009 MT 417, ¶ 14, 354 Mont. 1, 221 P.3d 1200.

## DISCUSSION

¶9 *Did the District Court err in granting DOWL's motion for partial summary judgment?*

¶10 Zirkelbach argues on appeal that the District Court erred in granting partial summary judgment in favor of DOWL. Specifically, Zirkelbach contends that Montana law clearly disfavors the limitation of liability clause found within the Agreement because it is against public policy. Zirkelbach further maintains that the contract is ambiguous because the limitation of liability clause reflects a lack of meeting of the minds as to who shall bear the burden of liability.

4

¶11 DOWL counters that the District Court correctly granted partial summary judgment concluding that the limitation of liability clause within the Agreement did not violate public policy. Further, DOWL argues Zirkelbach should be estopped from asserting the argument that the contract is ambiguous because Zirkelbach failed to present the same argument to the District Court. Moreover, DOWL asserts that § 5(D) is clear and unambiguous.

¶12 As a threshold matter, it is well-established we will not address an issue raised for the first time on appeal, nor will we address a party's change in legal theory. *Becker v. Rosebud Operating Servs.*, 2008 MT 285, ¶ 17, 345 Mont. 368, 191 P.3d 435. We will not address Zirkelbach's arguments that were not raised to the District Court. However, we agree with the District Court that the limitation of liability clause is subject to only one interpretation and therefore the clause is clear and unambiguous. Section 28-3-401, MCA; *Mary J. Baker Revocable Trust v. Cenex Harvest States, Coops., Inc.*, 2007 MT 159, ¶ 19, 338 Mont. 41, 164 P.3d 851.

¶13 "The fundamental tenet of modern contract law is freedom of contract; parties are free to mutually agree to terms governing their private conduct as long as those terms do not conflict with public laws." *Winter v. State Farm Mut. Auto. Ins. Co.*, 2014 MT 168, ¶ 26, 375 Mont. 351, 328 P.3d 665 (internal citations omitted). "This tenet presumes that parties are in the best position to make decisions in their own interest." *Arrowhead Sch. Dist. No. 75 v. Klyap*, 2003 MT 294, ¶ 20, 318 Mont. 103, 79 P.3d 250. "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contract, so far as the same is ascertainable and lawful." Section 28-3-301, MCA;

5

*Mary J. Baker Revocable Trust,* ¶ 21. "To permit the avoidance of a written contract because the terms of the contract now appear burdensome or unreasonable would defeat the very purpose of placing a contract into writing." *Marco & Co., LLC v. Deaconess/Billings Clinic Health Sys.*, 1998 MT 26, ¶ 16, 287 Mont. 293, 954 P.2d 1116.

¶14 Contract terms that violate § 28-2-702, MCA, are unenforceable. *Miller v. Fallon Cnty.*, 222 Mont. 214, 222, 721 P.2d 342, 347 (1986). Section 28-2-702, MCA, provides:

> All contracts that have for their object, directly or indirectly, to exempt anyone from responsibility for the person's own fraud, for willful injury to the person or property of another, or for violation of law, whether willful or negligent, are against the policy of the law.

¶15 This Court first interpreted § 28-2-702, MCA, in *Miller*. In *Miller*, the plaintiff signed a release form stating, "I hereby waive any rights whatsoever against Pre-Fab Transit Co." *Miller*, 222 Mont. at 217, 721 P.2d at 344. The Court found that private parties generally may contract away liability so long as the parties have equal bargaining power and the interest of the public is not involved. *Miller*, 222 Mont. at 220, 721 P.2d at 346 (citing *Haynes v. Cnty. of Missoula*, 163 Mont. 270, 279-80, 517 P.2d 310, 376 (1973)). However, the Court held that the release waiver contractually exculpated the company from any liability; consequently, the waiver under § 28-2-702, MCA, violated public policy. *Miller*, 222 Mont. at 222, 721 P.2d at 347.

¶16 Since *Miller*, this Court has addressed § 28-2-702, MCA, in two cases holding that the statute is not violated when business entities contractually limit liability but do not eliminate liability entirely. *Keeney Constr. v. James Talcott Constr. Co.*, 2002 MT 69, 309 Mont. 226, 45 P.3d 19; *Five U's, Inc. v. Burger King Corp.*, 1998 MT 216, 290

6

Mont. 452, 962 P.2d 1218. In *Keeney,* the Court found that the contract barred recovery for any damages attributed to a delay. *Keeney*, ¶ 22. This recovery bar applied only to a narrow type of damages, not all damages, and therefore it did not exculpate the company from liability. Thus, we held that § 28-2-702, MCA, did not apply. *Keeney*, ¶ 22. Similarly, in *Five U's*, we held that a rent abatement clause did not exculpate the defendant from all liability; rather, it only limited damages for any period the building was rendered unusable. *Five U's*, ¶ 23. Ultimately, the contract terms were enforceable under § 28-2-702, MCA, because the contracts did not exculpate the companies from all liability.

¶17 Further, we find Magistrate Judge Lynch's order in *Baldwin Lynch Energy Corp., v. Schlumberger Tech. Corp.,* 2013 WL 12130400 (D. Mont. Nov. 12, 2013), persuasive. In *Baldwin,* two oil and gas companies entered into a contract to perform a cement squeeze procedure to preserve production of an oil well. The contract contained a limitation of liability clause specifically capping the damages to the costs of services provided. Judge Lynch found that the limitation of liability clause was valid under Montana law unless the trier of fact found that Baldwin Lynch was in a "substantially weaker bargaining position." 2013 WL 12130400 at *11. Judge Lynch's rationale is consistent with our previous interpretation of § 28-2-702, MCA, holding that contracts containing clauses that limit liability between two business entities, with equal bargaining power, would not contravene § 28-2-702, MCA.

¶18 Zirkelbach and DOWL's Agreement is enforceable unless it is deemed against public policy under § 28-2-702, MCA. As noted above, we have interpreted § 28-2-702,

7

MCA, to prevent parties from contracting away all liability. Here, Zirkelbach and DOWL entered into an Agreement containing a limitation of liability clause that capped damages at $50,000. Similar to *Keeney* and *Five U's*, the limitation of liability clause does not exempt Zirkelbach from all liability, only limits liability to the amount agreed upon by the parties. And although Zirkelbach asserts this limitation acts as an exculpatory clause, it does not exempt DOWL from liability under the Agreement. Therefore, we conclude that the limitation of liability clause does not exempt Zirkelbach from all liability and thus, § 28-2-702, MCA, is not violated.

¶19 Next, Zirkelbach argues that the limitation of liability clause indirectly exculpates DOWL from liability because it is a nominal amount compared to DOWL's total fees. This Court is not persuaded. At the time the Agreement was signed by both parties, the $50,000 limitation was nearly 40% of DOWL's fees. After the subsequent addenda were executed by the parties, DOWL's fees totaled $665,000 but the limitation of liability amount remained the same. Upon completion of the Facility, DOWL's liability to Zirkelbach under the Agreement was approximately 8% of DOWL's total fee. The failure of Zirkelbach to address or renegotiate the limitation of liability clause during the execution of each addendum has made the term of the contract more burdensome than previously anticipated by Zirkelbach. This Court is unwilling to allow Zirkelbach to avoid a term of the contract simply because it has become more burdensome due to its own failure to renegotiate. Furthermore, enforcing the contractual clause does not deny Zirkelbach a remedy because DOWL remains exposed to liability on the negligence claim.

¶20     Finally, Zirkelbach maintains that this Court should follow California case law in interpreting the statute. Montana's interpretation is consistent with California case law. Section 28-2-702, MCA, was adopted verbatim from California and this Court has previously found California case law persuasive in its interpretation of the statute. *Miller*, 222 Mont. at 220-21, 721 P.2d at 346. Zirkelbach relies heavily on *Tunkl v. Regents of Univ. of Cal.*, 383 P.2d 441 (Cal. 1963), for the proposition that the limitation of liability clause found within the Agreement is against public policy. However, in *Tunkl,* the court was dealing with an exculpatory clause, not a limitation of liability. *Tunkl*, 383 P.2d at 442. Further, the court in *Tunkl* noted that "no public policy opposes private, voluntary transactions in which one party, for a consideration, agrees to shoulder a risk . . . ." *Tunkl*, 383 P.2d at 446. Furthermore, in *CAZA Drilling (California), Inc. v. TEG Oil & Gas U.S.A., Inc.*, 142 Cal. App. 4th 453 (2006), the court concluded that it would be difficult to imagine a situation where a contract between relatively equal business entities would be able to meet the required characteristics of a transaction that implicated public interest. *CAZA Drilling*, 142 Cal. App. 4th at 469.

¶21     Although this Court has found *Tunkl* persuasive in previous interpretations of § 28-2-702, MCA, it is apparent from subsequent California case law that two sophisticated businesses are in the best position to accurately determine their risk of economic loss and contract to reflect that assessment. *See Miller*, 222 Mont. at 220-21, 721 P.2d at 346. Here, Zirkelbach and DOWL are experienced, sophisticated businesses that had equal bargaining power when they voluntarily entered into the Agreement for

professional services. Thus, Zirkelbach's reliance on *Tunkl* is misplaced and the limitation of liability found in the Agreement under § 5(D) is enforceable.

¶22 Therefore, we hold that the District Court did not err in granting partial summary judgment to DOWL on Zirkelbach's breach of contract claim.

## CONCLUSION

¶23 For the foregoing reasons, we uphold the District Court's order granting DOWL's motion for partial summary judgment.

¶24 Affirmed.

/S/ MICHAEL E WHEAT

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ DIRK M. SANDEFUR
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE

10